Kinkead, J.
A demurrer to the petition of the plaintiff and to the cross-petitions of defendants by Mary E. Haviland is submitted.
The action of plaintiff and of the cross-petitioners is in the nature of a creditor’s bill upon judgments obtained by them against the bondsmen of an executor. Mary E. Haviland'is the widow of Michael Haviland,- deceased, who was one of -the bondsmen on the executor’s bond.
The rights of the respective parties were determined upon a general demurrer to the petitions and cross-petitions nearly two years ago, a report of which decision, with the facts stated in *20 full, is found in Fleming v. McGuffey 8 N.P.(N.S.), 430. The present demurrer is submitted upon two grounds:
First, that the court has no jurisdiction of the subject-matter of the action; second, that the plaintiff has no legal capacity to sue, and the cross-petitioners have no legal capacity to sue.
It is argued that plaintiff 'and cross-petitioners being mere creditors of the deceased, Michael Haviland, can not collect their judgment debts in an action of this character against the administrator of the decedent’s estate by enforcing a sale of his real estate as sought in the petition; that it is the exclusive function of the administrator to sell the land and pay the debts of the estate.
The plaintiff in this case obtained judgment against Michael Haviland’s estate November 11, 1904. The cross-petitioner, the Tribune Fresh Air Society, obtained its judgment June 17, 1905 Immediately upon the conclusion of the original case to test the liability of the Haviland estate upon the executor’s bond, which was April 22, 1902, Mary E. Haviland commenced her action in this court which was concluded June 18, 1904, in which the destroyed deed was restored, which placed the title to the premises in controversy in her,
As stated, this court upon general demurrer has found the equities in favor of the petitioner and cross-petitioner and against Mary E. Haviland, and all that remains to be done is to try the case upon the facts. If the petitioners establish thei” contention upon trial, a court of equity will be called upon ir decree that the property in question belongs to the estate of Michael E. Haviland, and not to his widow, and" that it is, therefore, subject to sale for the payment of his debts. These facts make it readily apparent that the interposition of a court of equity is first necessary before any sale of the property can be had.
The facts in this case remove it from the operation of the rule applied inSidener v. Hawes, 37 Ohio St., 532. In the latter case there was no controversy concerning the ownership of the lands by the decedent, but it was conceded to be in him. An heir, to whom it descended, has conveyed it away without there *21 having been an administration of the estate, the debts of whic! had not been paid. The sale by the heir eould not divest the land from the lien of the debts. While the court in this case did settle and adjust equities which the purchaser had, this relief was incidental and not paramount.
In the case in hand the paramount relief demanded concerns the rights of the estate of Haviland and his widow. She claims the property under a deed, which her husband destroyed during his lifetime, he promising her that he would give her his property by will, and did give her the same property by his will. The deed was given to the wife in the first instance for a stale loan. She accepted the terms of the will, took possession of the property, and deeded some of it away. She did not see the neeessof having the destroyed deed restored until the liability of the estate to these creditors on the bond was fixed. She immediately resigned as administratrix of her husband’s estate, brought suit to restore the deed against the administrator, but did not make these judgment creditors parties thereto, although their actions were pending.
These matters have been determined upon general demurrer, and the facts need not here be further set forth. Sufficient has been stated to show that only a court of equity upon suit of the judgment creditors has power to determine the equities primarily between them and Mary E. Haviland concerning the land in question.
The former decision in fact has settled the nature and character of this suit. Whether right or wrong, this .court has with scrupulous care made a finding of the relative rights of these parties and established the law applicable thereto. Fleming v. McGuffey, 8 N.P.(N.S.), 430.
It seems idle to now contend, in view of the very great difficulty in arriving at a conclusion concerning the equities, that this action should be dismissed, and'that the administrator should commence the ordinary legal proceeding to sell the .real estate. The probate court has no general equity power which would enable it first to determine the equitable questions involved which is a neeesssary pre-requisite to a sale of the real estate. This *22 court could not entertain an ordinary proceeding to sell real estate without first determining upon an independent cause of action the equitable question involved.
I have made diligent search among the authorities, old and new, to ascertain whether an executor or administrator has the right to bring a suit in equity to cancel or set aside conveyances made by his decedent for any reason other than fraud on his part to defeat his -creditors. It must be remembered that proceedings to sell real estate are of' statutory origin. The common law did not subject the lands of a decedent to the payment of his debts. And when the statute ^prescribed this remedy, it designated the administrator as the person to bring the action. It seems reasonable that the powers of an administrator are no broader than the powers conferred upon the courts by tin's statutory proceeding. Under the old system when the administrative features of an estate were within the jurisdiction of ecclesiastical courts, the chancery courts furnished a remedy for discovery of assets which were concealed by heirs or embezzle'd by the administrator. This remedy is now provided by statute but does not and may not be applied to realty.
I find in Wisconsin where the rule prevails that courts of original equity jurisdiction have general equity jurisdiction with county courts (probate courts) over matters pertaining to settlement of estates, Burnham v. Norton, 100 Wis., 8, the courts recognize the right of an administrator to institute an independent suit in equity to acumúlate and secure the custody of the assets of the estate so that they maybe distributed among those right fully entitled to them. And this, too, independently of the statute respecting embezzlement or concealment of assets. But the remedy was not pursued respecting title to real estate. Eisentraut v. Cornelius, 134 Wis., 532.
Shotwell v. Struble, 21 N. J. Eq., 31, is an 'illustration of a suit in equity by an administrator for discovery and injunction concerning personalty. Kirby v. Railway, 14 Fed. Rep., 261, is an instance where an executor of a deceased member of a nership maintained a suit in equity to discover the amount due to such partnership, and to recover such amount.
*23 I 4o not believe there ever was, or is now, among modern decisions, any precedent or authority to warrant .an administrator to bring a suit in equity to contest the title or right to property in a case similar to the facts presented here. The personal estate was always regarded in equity as the natural primary fund for the payment of debts and legacies. It was but natural, therefore, for the courts in those states exercising concurren jurisdiction in regard to the settlement of estates, to still recognize suits in equity concerning personalty by administrators: When the common law was in force, and the deceased’s debts were not a charge upon his lands, in the anxiety of courts of equity to secure justice to creditors, very slight words in wills were construed as creating a charge on lands (Woerner, Administration, Section 490). So in this state, though the chancery jurisdiction in this court is merely auxiliary, the anxiety of the court in the exercise of such equitable jurisdiction as remains in it, should be directed toward the recognition of a suit on behalf- of judgment creditors under circumstances as shown here, to subject the real estate standing in the name of the decedent for a long time prior to and at the time of his death, and claimed by his widow under these circumstances, where there is the least doubt as to the efficiency of the ordinary remedy at law for the sale of real estate by an administrator. But I feel satisfied from careful examination of this subject now and at other times, that an administrator may not bring a creditor’s bill to determine equities as they are presented by the facts in this case. It has been held in those states where equity jurisdiction is concurrent in courts of original jurisdiction with those exercising probate jurisdiction, that a creditor may institute an action to subject the lands of a decedent to sale, where the administrator has delayed in so doing for an unreasonable length of time.
And when there has been no administration, and the heirs have divided the properety among themselves, the right of a creditor to bring the action is recognized (Cameron v. Cameron, 82 Ala., 392). So in this state, where the equity jurisdiction is auxiliary, this court should entertain jurisdiction in a case like this where the widow who claims ownership of the property as *24 against the estate, has acted as administrator throughout the litigation and until defeat in the Supreme Court, and who did not change her attitude from a devisee to that of an owner by virtue of an alleged destroyed deed, until the liability was fixed" against the state. The recognition of jurisdiction in equity in the ease of Taylor v. Huber, 13 Ohio St., 288, without the delay and expense of successive administrations, is not stronger justification than the circumstances of this case show for retaining jurisdiction.
The contest, as I view it now, is one primarily between the judgment creditors and Mary E. Haviland, widow. This action is in the nature of a creditor’s bill to reach assets which justly and equitably, so far as the pleadings disclose, belong to Michael Haviland’s estate. The purpose of the action was to bring this property within the power and control, of the administrator of his estate, so that it might be administered.and distributed by him. Special objection is made because the petitioners ask sale of the real estate involved. It will be noticed that the prayer of the petition, relating to the Haviland property, is .as follows:
“That all of the property owned by Michael Haviland at the time of his decease may be sold to pay his debts, and .all deeds therefor may be set aside and declared null and yoid as to his creditors, and that all persons now owning or holding any of his said land may be compelled to account for the proceeds of such land and for the rents, issues and profits thereof.”
It is shown in the petition that Mary E. Haviland has made a number of deeds in her own name, and the petition seeks to have these lands all made subject to the payment of the debts of the estate. The rule is that the court will afford whatever relief the facts pleaded warrant, the several prayers if inconsistent therewith being disregarded if necessary. The fact that, among other reliefs prayed for, the complainants here ask for a sale of the real estate is not material. The principal relief prayed for concerns title and equities between the parties. This court may proceed to hear .and determine the rights of the parties under the pleadings in this case, and if it be finally found that the property in controversy belonged to Michael Haviland, it may *25 direct that the same be turned over to the administrator to be administered by him according to law. The relative powers and functions of the probate and common pleas courts in respect to the settlement of estates of deceased persons are clear and distinct. There is no difficulty whatever in reaching a conclusion in the questions raised by this demurrer.
The power of probate courts in Ohio over the administration of estates is so broad, minute and peremptory that the general jurisdiction originally belonging to courts of chancery- over the settlement of decedent’s estates is completely taken away from this court -and wholly transferred to the exclusive cognizance of the probate -courts. Many of the so:called contentious matters formerly within the exclusive jurisdiction of equity have been committed to the jurisdiction of courts of probate. This court, however, still has jurisdiction in equity over the subject-matter of a decedent’s estate for any special purpose not within the competency of the probate court. This jurisdiction in equity is entirely auxiliary and can be exercised only when the remedies conferred upon the probate court are imperfect or inadequate, and with reference to matters which lie outside of the regular course of -administration and settlement which are purely of equitable cognizance -and which do not come within the scope of the probate jurisdiction. See 1 Pomeroy, Eq. Jurisp., Sections 235, 1154; Piatt v. Longworth, 27 Ohio St., 159, 186; Taylor v. Huber, 13 Ohio St., 288; McDonald v. Aten, 1 Ohio St., 293.
The practice was not so clearly drawn when this court exercised jurisdiction in probate matters. Cram v. Green, 6 Ohio, 429; Stiver v. Stiver, 8 Ohio, 217; but, as stated in Piatt v. Longworth, supra, page 186:
“Since the probate act of 1853, that court has exclusive jurisdiction of the settlement of accounts of executors and administrators. When that remedy proves inadequate the aid of a court of equity may be invoked.”
In Taylor v. Huber, supra, a trust was enforced in equity without the delay and expense of successive administrations. The equitable principle expressed in a dictum in McDonald v. *26 Aten, supra, page 297, has material bearing on the ease. The judge delivering the opinion there stated that cases may arise:
“When, from the peculiar relations of the administrator to the estate, or his connection with a title sought to be converted into assets, in the opinion of a majority of the court, the aid of a court of. equity may be invoked by a creditor, not for a general settlement of the estate of which he is a creditor, but for the purpose of reaching and placing in the hands of the administrator assets which might otherwise not be reached. But, this object accomplished, the court of equity will have performed its function, and leave the distribution of the assets thus obtained, to the probate court.”
Pomeroy, Eq. Jurisp., Section 1154, p. 2297, states:
“By virtue of the auxiliary jurisdiction of equity, a creditor may maintain a suit somewhat in the nature of a creditor’s bill, to reach assets which justly and equitably belong to the estate and to bring them within the power and control of the administrator, so that, they may be administered upon and distributed by him.”
This appears to be precisely what the petitioners are seeking to have done in this case. Or, in other words, if the lands are finally subjected to the demands of the creditors in this case, if found necessary, the court may either order the property sold and the proceeds turned over to the administrator for distribution, or it may direct that the same be turned over to the administrator to be sold. The court may exercise its discretion by ordering the property to be sold in this proceeding to save the expense of a new action by an administrator. . It is claimed here that good title can not be passed to the purchaser upon a sale ordered in this proceeding. This contention is not well founded in view of the authorities cited in this opinion. It is also claimed that the petitioning creditors are seeking to have the proceeds of the property paid over direct to them. This claim is not well founded because if the land should be sold in this proceeding, the proceeds thereof will be directed to be paid over to the administrator to be distributed by. him according to law.
The logical result of the contention of counsel would be that *27 the creditors 'not having the right to prosecute this action, they must resort to the remedy of proceedings to sell real estate by an administrator to pay debts. This question may become pertinent in the event that the petitioners are successful in the trial of the merits of the action. The question of what this court would finally do, touching the sale of this property in the event of a decree in favor of the creditors, has an important bearing, upon the questions raised by the demurrer. In assuming jurisdiction in equity over this case, the court may observe the rule of equitable procedure by continuing to exercise its jurisdiction to the end that full and complete justice may be done without regard to the remedy prescribed by law for the sale of real estate by an administrator for the payment of debts. Having properly acquired jurisdiction over the Iiaviland lands, this court would hestitate to turn the sale of lands over to an administrator after the lapse of so many years since the death of Michael Haviland. in view of the holdings by intermediate courts in the state touching the time within which proceedings by an administrator to sell lands may be brought. The Superior Court of Cincinnati, Sayler, J., has held that the six year limitation governs such actions. I can not now give the ease or report, but it was an action to sell lands for the payment of a legacy. The Circuit Court of Coshocton County, Ling v. Strome, 12 C.C.(N.S.), 161, in an action to quiet title as against the claim of an administrator of the right to sell the decedent’s lands immediately upon the death of the widow, has held .that the six year limitation applies to the right of an administrator to sell lands on the ground that the liability to have lands taken from those to whom it descends and applied to the payment of the debts, is one created by a statute and is governed by the six year limitation. Revised Statutes, 4981 (General Code, 11222).
While I am of the opinion that there is no positive statute of limitation applicable to such proceedings, and though the Supreme Court in Lafferty v. Shinn, 38 Ohio St., 46, and in Taylor v. Thorn, 29 Ohio St., 569, sustained proceedings by an administrator to sell real estate many years more than six years after the death of the decedent, this court would be justified in *28 refusing to subject the creditors in this ease to the hazard of such claims by turning the sale of the real estate over to an administrator after a decree that the lands in question belong to Michael Ilaviland’s estate. It would for this reason and other reasons be justified in continuing to exercise its equitable jurisdiction to the end that the lands should be ordered to be sold •so as to apply the proceeds thereof to the payment of the claims. This course should be pursued because the claims asserted have been prosecuted in due' time and equity should continue to exercise its jurisdiction until the proceeds of the real estate are placed in the hands of the .administrator to be distributed according to law, if that should be the final decree in the case.
It is the order of the court that the demurrer to the petition and cross-petitions be overruled.
Demurrer to Answer.
A demurrer to the second defense in the answer of Clare Smith is also admitted for decision in this case. The defense alleges that the administrator of the estate of Michael Havi-. land, deceased, is the party prescribed by law to bring and maintain an action for the sale of the real estate of the deceased to pay the debts. The demurrer presents the same question as was raised by that of Mary E. Ilaviland to the petition and cross-petition. It assumes a different phase, however, under the facts relating to the Smith property.
The demurrer to the petition and cross-petition was overruled upon the theory that by reason of the claims and equities in controversy between the judgment creditors and Mary E. Ilaviland, this proceeding in equity was necessary, and that the ordinary .proceeding by an .administrator to sell was inadequate. But I find in passing upon this demurrer and stating the reasons for the action taken upon it, that they are as applicable to the decision on the demurrer of Mary E. Haviland and strengthen and fortify that conclusion.
Tlie facts presented by this demurrer are simply that Mary E. Haviland took the Smith property as sole devisee and in thal capacity she conveyed it to Lucien Livingston, September 10, *29 1898, who in turn conveyed it to Clare Smith, October 17, 1933.
It is urged by counsel for Smith that the rule in Sidener v. Hawes, 37 Ohio St., 532, should apply to the property involved in this demurrer.
It seems to me that impartial reflection upon this proposition, considering the facts, will at once disclose that the circumstances in so far as they reflect upon the character of relief sought and which must be granted before an order of sale is made, will show that the equitable remedy now being pursued by the judgment creditors is the only adequate one. The question in Sidener v. Hawes, supra, was a simple matter of sale of the real estate, which had been conveyed away by an heir of the decedent, by the administrator to pay debts. There was no primary and paramount equitable relief necessary in that case before a sale was ordered. Some incidental relief subsequent to the sale was necessary in order to protect the equities of the innocent purchaser. We need, however, only to carefully read the petition and cross-petition in this case to readily perceive that this proceeding is the only adequate method of adjusting the complicated equitable questions concerning all the property involved in the ease, including the Smith property as well as the facts relating to the remaining portions of it. The judgment liability asserted in this case is a joint and several judgment rendered against John G. McGuffey, Frank F. Hoffman, Zeno G. Payne, Mary Walton and Michael Haviland, or against the estates of the deceased persons. It is averred that execution was issued upon the judgments and returned nulla bona. This is usually regarded as a condition precedent to bringing a creditor’s bill, that some of thé defendants to the judgment are insolvent.
It is urged in .argument that the judgment upon the claim of the petitioner .and cross-petitioner must be treated in the same light as any adjudication in an action on a claim which has been rejected. That is, the debt that may be proved in the action, “shall be paid only out of speh assets as remain in or come to the hands of the executor or administrator after paying the sums due on prior order of distribution.” General *30 Code, 10892, 10903. General Code, 10737, forbidding issuance of execution upon a judgment against an administrator, is also cited.
The inferential argument made from these provisions is that it tends to show that the ordinary way of satisfying the judgments is by petition to sell real estate by the administrator.
The design of the statute is that the orderly course of administration shall not be affected by an execution. The court rendering-judgment is given power by the statute to so regulate the execution as 'to reach the just proportion of the assets applicable to the judgment.
This argument, in my judgment, only tends to strengthen the position that this action is the only adequate remedy to be pursued in this case. The petition does not show that any execution was issued and levied upon any real property. It could not have been because of the condition of the property.
A circuit court decision is cited by the demurrants, Hoffman v. Kiefer, 19 C. C., 401. This case decides that the remedy provided by General Code 6139 by an administrator to set aside a decedent’s fraudulent conveyance is not exclusive, but that a court of equity has jurisdiction to entertain such an action by a creditor.
How much more reason there is, therefore, for continuing this case, and overruling the demurrer because of the complications in the property involved and in the several liability of the parties, and all the debts of the Haviland estate- being p excepting these claims.
It is not made clear by the petition what portion of the property of any one of the defendants must be sold in order to satisfy the claims, nor can a court determine how much of th property of the Haviland estate, whether all or a portion of it, shall 'be sold, until the facts are fully developed, upon a trial of the case. Some of the conveyances are charged as bein fraudulent transfers on the part of the grantors to evade these judgment claims while others are not so attacked. Some of the grantors are dead, and others are the legal representatives. The chargé of fraud, against McGuffey, who is deceased, is a liability *31 connected with persons living and dead and administrator’s suit for the Haviland lands could not be made the vehicle to adjust the liabilities. It is averred finally that neither the said John G. McGuffey, Zeno O. Payne, Frank F. Hoffman, Mary Walton or Michael. Haviland’s estate has sufficient property to pay the judgments except for the property which he described and set'forth in the petition, and that the judgment is joint and several against all of them, and that such transfers and liens cast clouds upon the said property. It seems apparent, therefore, that by reason of’ the complications respecting the real estate involved, that it will be difficult to determine what proportion. of the- lands of any of the defendants should be sold. I do not see how the questions involved in this case could possibly be determined by any other proceeding than a creditor’s bill. It would be impossible for the liabilities of the several bondsmen and their estates, by reason of the joint and several judgments, so far as respects the real estate bound thereby, to be settled in a proceeding brought by an administrator of the Haviland estate. It would be a strange proposition to have an administrator of the estate of one of the deceased judgment debtors sell the property belonging to that estate voluntarily for the purpose of paying off judgment claims which are liens upon property belonging to several other .joint debtors. It seems to me that putting the question as it has just now been stated is a complete refutation of the claim that any remedy other than a creditor’s bill is adequate. An administrator of the Haviland estate could not' in a proceeding be made to sell the property for the proportion which his estate should pay on the judgment determined in that kind of an action without having the estates of the other individual bondsmen made parties defendant in the case. Such a proceeding would be unusual and this view of it demonstrates the utter fallacy of the claim made upon the demurrer.
In passing upon the Haviland demurrer -my mind was absorbed with the equitable questions which surround her claims by reason of the suit restoring the destroyed deed. The grounds stated in this opinion did not occur to me at that time, but they *32 apply equally to that decision. I find in going over the petition again, that it is directly charged that the suit of Mary E. ITaviland to restore the deed was for the purpose of hindering, delaying and defrauding creditors and to cover up the property and that it was based upon an unfounded fraudulent and illegal claim devised and concocted to defraud the creditors of Michael Haviland. This was not an act charged against a decedent. U there is anything in this charge, it is evident that such a claim could not have been made by an administrator to sell the particular part of the real estate covered by this deed. The restoration of the deed by this judicial decree presents an altogether different situation from an ordinary conveyance of'property by an heir.
One further matter may be mentioned. The petition alleg that all of the preferred claims and the debts of the Haviland estate have been paid. If this proves to be the fact and that these judgments are the only remaining debts, the ease is then brought clearly within the rule expressed in Taylor v. Huber, 13 Ohio St., 288. The widow of MiehaerHaviland had been in possession'of the estate for some time and had made numerous conveyances. This shows that the debts must all have been paid or she could not have thus dealt with the property as her own. The claim that an administrator should now bring the action to sell real estate in view of all these facts does not come with much force. Applying the rule of the Supreme Court expressed in the last cited case, there being nobody to be paid from the property of the estate except those judgment creditors, equity may decree a sale of the property and payment directly to the judgment creditors without the delay and expense of another administration.
The‘demurrer to the second defense of the answer of Clare Smith is sustained.